IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02574-RBJ

ELROY LEE,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO;
DAVID RYAN, individually and in his official capacity;
CHOICE JOHNSON, individually and in his official capacity; and
RANDALL KROUSE, individually and in his official capacity,

    Defendants.

## ORDER

The case is before the Court on Defendant City and County of Denver's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 16]. For the reasons set forth herein, the motion is granted in part and denied in part.

### BACKGROUND

For purposes of this motion, the Court assumes the truth of the allegations set forth in the Complaint. During the morning of September 23, 2012 three Denver Police Department ("DPD") officers arrived at the home of the plaintiff, Elroy Lee, explaining that they believed a stolen cell phone was located in Mr. Lee's home. Mr. Lee, then 76 years old, stated that he did not possess a stolen cell phone, and he gave permission for the officers to search his home. Before entering the home, one of the defendants, Officer Ryan, walked around the perimeter of the house. He was accompanied by an elderly friend of Mr. Lee, Barbara Williams, who had

been at the house when the officers arrived. Officer Ryan used a tracking device to conclude that the stolen cell phone was in the southwest corner of Mr. Lee's home.

When Officer Ryan and Ms. Williams returned, the three officers again asked permission to search Mr. Lee's home, which Mr. Lee again granted. Ms. Williams led the officers inside, and when Mr. Lee turned to follow Officer Johnson "commanded 'no' and violently grabbed Mr. Lee's shoulder, twisted his body around, and grabbed his hand, intentionally bending his fingers so far back that the tips of his fingers nearly touched the top of his hand." Complaint [ECF No. 1] ¶ 31. Officer Johnson then handcuffed Mr. Lee "extremely and excessively tightly" with the assistance of Officers Ryan and Krouse. *Id.* ¶ 34. Mr. Lee immediately complained that the handcuffs were too tight and that they were causing him significant wrist and shoulder pain, but none of the officers took any action to loosen or remove the handcuffs. Mr. Lee continued making these complaints throughout his interaction with the officers.

At this point, Officer Ryan insisted that Ms. Williams accompany him while he searched Mr. Lee's home, adding that Mr. Lee could not be present. Mr. Lee remained handcuffed on his porch, in the custody of Officers Johnson and Krouse, while Officer Ryan searched the home. Officers Johnson and Krouse then forced Mr. Lee to exit his porch and walk down his driveway to the street. When halfway down the driveway, Officer Krouse left Mr. Lee in custody of Officer Johnson so that he could go back to the house and assist in the search. At some point thereafter, Officer Johnson took Mr. Lee back to the porch and removed his handcuffs; approximately 15 minutes had passed since they had first been placed on him. Officer Johnson then instructed Mr. Lee to sit down on a chair in his kitchen.

Soon after, the officers completed their search.  The officers did not find the stolen cell phone they had been looking for, and no criminal charges or citations were brought against Mr. Lee or Ms. Williams.  The officers then left Mr. Lee's house.

Later that same day, Mr. Lee filed a complaint against the officers with the Internal Affairs Bureau of the DPD ("Internal Affairs") alleging that the officers has unjustifiably arrested him and deliberately caused him significant physical and mental harm.  According to the plaintiff, although Internal Affairs interviewed witnesses that confirmed Mr. Lee's depiction of the incident it chose not to investigate further and DPD never disciplined the officers.

The plaintiff includes in his complaint allegations that DPD officers have continuously and consistently been permitted to use inappropriate force without being held accountable for their actions.  In effect, he claims that the City of Denver (the "City") has failed to adequately train or supervise its officers with respect to the use of excessive force.  He includes statements of Richard Rosenthal, who served as the City's Independent Monitor from July 2005 through January 2012, and Alvin LaCabe, the City's former Manager of Safety, in support of these allegations.  He adds that upon information and belief all three defendant officers had complaints filed against them for the use of excessive force between 2003 and the first half of 2011, before the incident took place.  In particular, Officers Ryan and Krouse each had at least two excessive force complaints and Officer Johnson (the individual who grabbed and cuffed Mr. Lee) had twelve.[1]  Meanwhile, all three remained active police officers.  Mr. Lee contends that the City's custom, policy, or practice of failing to adequately train, supervise and/or discipline its police officers was the moving force behind the constitutional violations he suffered.

---

[1] According to the Complaint, only 10 of 935 DPD officers had been accused of ten or more excessive uses of force during this time period.

On September 17, 2014 Mr. Lee filed the present suit. He brings two 42 U.S.C. § 1983 claims against the three officers in their individual capacities, alleging unlawful seizure/false arrest and excessive force in violation of the Fourth Amendment as incorporated by the Fourteenth Amendment. He also asserts both of his § 1983 claims against the City and against the officers in their official capacities under a theory of municipal liability.

The City filed the pending motion to dismiss on the grounds that the plaintiff failed to sufficiently plead municipal liability such that all claims against it, and against the officers in their official capacities, must be dismissed. Mr. Lee contends that the allegations in his complaint are sufficiently well pled such that all claims should move forward. The officer defendants did not file a motion to dismiss the claims brought against them individually.

## ANALYSIS

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

To plead a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the United States

Constitution or its laws. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "A defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (alterations and citation omitted).

A plaintiff seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). This is because a municipality is only liable for actions for which it is actually responsible; it cannot be held liable under a theory of *respondeat superior*. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). As such, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original).

The existence of a municipal policy or custom can be established in a number of ways:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (alterations, internal quotation marks, and citations omitted).

Mr. Lee contends that he has sufficiently pled a custom or policy of the City that was the moving force behind his unlawful arrest and the use of excessive force. The Court agrees in part. Mr. Lee has made a sufficient number of allegations concerning the City's failure to adequately train or supervise its officers with respect to the use of excessive force, such that this failure

could amount to deliberate indifference to the alleged excessive force used against Mr. Lee. *See* Complaint [ECF No. 1] ¶¶ 61–62, 64–65, 67–69. The Court is not persuaded by the defendant's contention that the allegations are merely conclusory assertions or general recitations of the elements of municipal liability. The Court also disagrees with the defendant on whether the Court can rely on the statements of third parties if those statements appear in the Complaint. The Court is bound to assume the truth of the matters asserted, including claims about what others have said. In doing so, the Court does not take judicial notice of the statements. The defendants are welcome to dispute the use of those statements as evidence at a later stage of the litigation (if they have a sound basis for doing so) but not for purposes of this motion. And while the Court agrees that some of the allegations are insufficient to support municipal liability, the statements of Mr. Rosenthal and Mr. LaCabe as well as the statistics provided upon information and belief are sufficient, taken together, to make out such a claim.

With respect to the second claim, the Court has found no allegation that the City had a custom or policy that led to Mr. Lee's alleged unlawful arrest. The plaintiff contends that claims of false arrest/unreasonable seizure "can be subsumed by allegations of excessive force," citing *Montoya v. City of Albuquerque*, No. CIV 03-0261 JB/RHS, 2004 WL 3426436, at *5 (D.N.M. May 10, 2004), in support. [ECF No. 19 at 8; 8 n.3]. However, the *Montoya* case does not stand for such an expansive position. Instead, the case concerns two plaintiffs who got into an altercation with two police officers. One of the plaintiffs, Mr. Montoya, was being subjected to the use of excessive force, while the other, Mrs. Montoya, disobeyed an officer's order so that she could protect her husband. Mrs. Montoya was then arrested for disobeying the order, which she admitted having done. Yet Mrs. Montoya claimed that her arrest was unlawful because she was justified in defending her husband against the use of excessive force. The Court agreed,

holding that if the evidence showed that excessive force was being used, the order preventing Mrs. Montoya from defending her husband would have been invalid, and an arrest for disobeying such an order would have been unlawful. This case, however, is not at all similar to the incident that affected Mr. Lee. With Mr. Lee, an unlawful arrest could have been made whether excessive force had been used or not. The plaintiff has not persuaded the Court that any time an excessive force claim can be made so can one for illegal arrest. Likewise, it cannot be said that any time a city has an unconstitutional policy permitting or encouraging the use of excessive force it also has a policy supporting illegal arrests. The Court has read no allegations in the Complaint supporting municipal liability on the unlawful seizure/false arrest claim. Therefore, this claim is dismissed as against the City and the officers in their official capacities. *See Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

The City's final argument concerns the official capacity claims against the officer defendants. It contends that because suits against officers in their official capacity are treated as suits against the municipality, the official capacity claims against the officers should be dismissed. The plaintiff makes no argument in response, simply contending that insofar as the claims against the City remain, they too must remain against the officers in their official capacities. The Court sees no reason, however, to maintain duplicative claims. In all of the cases cited by the defendant, the courts have construed claims against officers in their official capacities as suits against the governmental entity itself. *See, e.g.*, *Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) ("[A]n official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Taylor v. Meacham*, 82 F.3d 1556,

1564 (10th Cir. 1996) ("Mr. Taylor's official-capacity suit against Sheriff Meacham is simply a suit against Uintah County."); *see also Whitewater v. Goss*, 192 F. App'x 794, 796–97 (10th Cir. 2006); *Zawacki v. City of Colorado Springs*, 759 F. Supp. 655, 659–60 (D. Colo. 1991). Because the City was named as a defendant, the official capacity claims against the officer defendants are dismissed as unnecessary and duplicative.

## ORDER

For the foregoing reasons, Defendant City and County of Denver's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 16] is GRANTED IN PART and DENIED IN PART. The plaintiff's unlawful seizure/false arrest claim is DISMISSED WITHOUT PREJUDICE as against the City and County of Denver and Defendants Ryan, Johnson, and Krouse in their official capacities. All claims brought against Defendants Ryan, Johnson, and Krouse in their official capacities are DISMISSED WITHOUT PREJUDICE.

DATED this 20th day of January, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge